IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SUMMERSET VILLAGE JOINT VENTURE )
LLC, )
)
            Plaintiff, ) TC-MD 110733D
)
      v. )
)
BENTON COUNTY ASSESSOR, )
)
         Defendant. ) **DECISION**

Plaintiff appeals the 2010-11 real market value of a manufactured mobile home identified as Account 800060 (subject property). Thomas P. Kerr (Kerr), owner and California licensed real estate broker, appeared on behalf of Plaintiff. Caleb Nelson (Nelson), Sales Data Analyst and former Oregon licensed appraiser, appeared on behalf of Defendant.

Defendant's Amended Motion to Strike, filed February 21, 2012, was discussed. The court denied Defendant's request that Plaintiff's Exhibit 8 not be admitted and granted Defendant's request that Plaintiff's Exhibit 13 not be admitted.

Plaintiff's Exhibits 1 through 12, 14 through 21 and Plaintiff's Rebuttal Exhibits 24, 25, and 27 through 31 and Defendant's Exhibit A and Defendant's Rebuttal Exhibits B and C were admitted without objection.

## I. STATEMENT OF FACTS

The parties agree that the subject property is a 1998 Liberty 3 bedroom, 2 bathroom manufactured mobile home with 1,080 gross square feet of living space. (Ptf's Ex 18-49; Def's A-3.) Kerr testified that Plaintiff "spent" money "to put the subject property" that is located in a mobile home park in southeast Corvallis, Oregon in marketable condition. He testified that the following costs were incurred to repair or replace door, toilet, blinds, carpets, smoke detector,

hand rail. (Ptf's Rebuttal Ex 28.) Kerr testified that the total material costs were $3,272 and labor was $3,775. (Ptf's Exs 10-19 and 12 -21.)

Kerr testified that he determined an indicated value of subject property to be $22,500 as of January 1, 2010. (Ptf's Ex 18-49.) In determining the subject property's indicated real market value, Kerr testified that he identified three properties comparable to the subject property and he considered the subsequent sale of the subject property. (*Id*.) Two of the three comparable properties were located in the same mobile home park as the subject property and the third property was located in Knoll Terrace, described by Kerr as Plaintiff's "competition." (*Id*.) To each of the comparable properties, Kerr made various adjustments to the sale price. (Id.) Kerr testified that he computed a time adjustment, comparing the average price per square foot for the manufactured homes located in Summerset Village and Knoll Terrace that sold in 2008 and 2009. (*Id*. at 3-3, -4.) Kerr testified that the difference between the 2008 and 2009 sale prices was 26 cents per square foot. (*Id*.) He divided 26 cents by 12 (number of months in a year) and multiplied the result times the number of months between the date the comparable property sold and the assessment and then multiplied that amount by the comparable property's number of square feet. (*Id*. at 18-49.) While testifying, Kerr realized that he had erroneously subtracted the time adjustment and testified that he should have added the time adjustment, correcting the indicated value of the subsequent sale of the subject property to $19,760 and stating that "that value is more in line with the indicated value of the other three properties." (*Id*.)

Kerr testified that to two of the comparable properties he made an adjustment for condition in the amount of $1,500. (*Id*.) He testified that the amount was based on his "opinion" and the reaction of someone "looking at the house at that stage – before it was rehabbed." Kerr testified that he made a size adjustment ($15 per square foot times the difference in square feet

between the subject property and comparable property) to two of the comparable properties because each comparable property was larger than the subject property. (*Id.*) Kerr offered no explanation as to why he did not make a size adjustment to comparable sale 3 that was 152 square feet larger than the subject property. (*Id.*)

Kerr made other adjustments for age, porches, deck, bedroom, and heat pump based on the difference between a comparable property and the subject property. (*Id.*) Kerr testified that the amount of those adjustments was based on his "opinion." Nelson disputed the amount of Kerr's adjustment for the heat pump, offering Defendant's Rebuttal Evidence C, showing the cost of a heat pump and an air conditioner.

To each of the three comparable properties and the subject property's subsequent sale, Kerr testified that he subtracted the cost of repairs, "materials and labor," and property taxes. (*Id.*) He testified that when Plaintiff took title to the subject property, the subject property's property taxes had not been paid. Kerr testified that in his opinion those are "costs of doing business" and a potential buyer would not "buy a property knowing the property taxes" were not current.

Nelson testified that he considered the comparable sales approach and the cost approach. Using the comparable sales approach, Nelson testified that he determined an indicated value of $27,000. (Def's A-9.) Nelson testified that he identified six properties comparable to the subject property, four properties located in the same mobile home park and two in a mobile home park four miles to the north of the subject property. (*Id.*) Kerr questioned Nelson about the comparability of the two properties located to the north of the subject property, stating that to live in that mobile home park an individual had to be 55 years of age or older and children were not allowed. Kerr offered Plaintiff's Rebuttal Exhibit 25-101, listing 27 "Purchasers: 2008-

2011" of manufactured homes located in Plaintiff's mobile home park. Kerr testified that of those 27 purchasers "maybe" two purchasers could live in the properties located in the "55 and older park."

Nelson testified that to each of the comparable properties he made a time adjustment based on the county's "ratio study" and in response to questions Nelson testified that he did not include the county's "ratio study" in his report. Nelson testified that he made applicable adjustments to the comparable properties' sale prices for class, age, condition, gross living area, bathrooms, covered deck, and forced air conditioning. With the exception of the forced air conditioning, Nelson testified that he did not include any evidence, including a paired sales analysis for the gross living area adjustment, in his report to support the amount of the adjustments. He testified that in making the "year built" and "covered deck/porch" adjustments he used "Marshall and Swift."

Nelson's appraisal report included the cost approach. (*Id*. at -14.) Nelson determined an "Indicated Value by Cost Approach" of $36,893. (*Id.*) Nelson stated his "[d]ata [s]ource" to be "Marshall and Swift Residential Cost Handbook." (*Id*.) Nelson requested that the court determine the subject property's 2010-11 real market value to be $27,000. (*Id*. at 2.)

II. ANALYSIS

The issue before this court is the subject property's real market value for the tax year 2010-11. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor,* TC–MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.,* 13 OTR 343, 345 (1995)). ORS 308.205(1) defines the "real market value" of both real and personal property as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller [in

exchange for the property], each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1] OAR 150-308.205-(A)(2)(a) sets out three "approaches" that Plaintiff "must" consider when determining the real market value of property: the sales comparison approach, cost approach, and income approach.[2] *See* ORS 308.205(2). Plaintiff used the comparable sales approach. Defendant relied on the sales comparison approach and cost approach, giving "the most weight" to the sales comparison approach because "it reflects the actions of buyers and sellers in the market." (Def's Ex A-9.)

A.       *Sales Comparison Approach*

A comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Mgmt. Corp and McKenzie River Motors v. Lane County Assessor,* TC-MD-No 060354D at 6 (Apr 3, 2007), quoting Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arm's-length market transactions."

Both Kerr and Nelson relied on the sales comparison approach. Each expert made adjustments to the comparable properties' sale prices, relying on "opinion" or information not included in his admitted exhibits. The lack of supporting evidence for the sale price adjustments is a significant hurdle for the court to conclude that either of the parties has correctly determined the subject

---

[1] All references to Oregon Revised Statutes (ORS) are to the 2009 edition.

[2] All references to Oregon Administrative Rules (OAR) are to the 2010 edition.

property's real market value. To cross that hurdle, the court will give the most weight to a comparable property sale price requiring the least number of adjustments and available evidence for those adjustments.

The subject property was purchased approximately 21 months after the assessment date. (Ptf's Ex 18-49.) There was no evidence that the sale transaction was other than arm's length. The purchaser paid $26,500. (*Id.*) Kerr included that sale among its comparable properties; Nelson did not. The subsequent sale of the subject property requires only a time adjustment and condition adjustment to make it the most comparable property to itself. Kerr and Nelson made a time adjustment. Kerr and Nelson agreed that a "positive" time adjustment is correct, concluding that the value of similar properties were higher as of January 2010 than March 2011. Kerr and Nelson disagreed as to the rate per month for a time adjustment. (Ptf's Ex 18-49; Def's Ex A-9.) Kerr's time adjustment was based on the reported 2008 and 2009 sale prices of properties located in Plaintiff's mobile home park and in another mobile home park that Kerr testified was Plaintiff's competition. (Ptf's Ex 3-3, -4.) Nelson testified that his time adjustment was based on Defendant's sale ratio study but did not include any evidence to support his computed adjustment. Given the available evidence, the court finds that the Summerset Village and Knoll Terrace mobile home park sales are the most helpful in determining a time adjustment. (*Id.*)

Kerr and Nelson disagreed as to the condition adjustment. Kerr made a $1,500 condition adjustment and additional adjustments for repairs and property taxes. (Ptf's Ex 18-49.) Nelson's condition adjustment for average minus to average condition was $2,500 and average minus to average plus condition was $5,000. (Def's Ex A-9.) Kerr testified that his condition adjustment was based on his opinion and the additional adjustments were actual expenses Plaintiff incurred to get the property into "market condition." According to Kerr's testimony, his condition

adjustment was based on the reaction of someone "looking at the house at that stage – before it was rehabbed." In adjusting a property's sale price, it is an accepted premise that the relevant adjustment is "not the actual cost that was incurred but the cost that was anticipated by both the buyer and seller." Appraisal Institute, *The Appraisal of Real Estate* 331 (13th ed 2008.) Both an anticipated cost and actual costs are not allowable adjustments to a sale price. Nelson's condition adjustment for average minus to average condition was $2,500 and average minus to average plus condition was $5,000. (Def's Ex A-9.) Nelson testified that his condition adjustment was based on his opinion. In this case, the subject property's subsequent buyer did not view the subject property until it was repaired and in a marketable condition. There is no evidence before the court as to the buyer's "anticipated costs." The court places little weight on Kerr's condition and actual cost adjustments. Given Kerr's testimony and evidence of the subject property's actual condition as of the date of assessment, the court concludes that Nelson's average minus to average plus condition adjustment is more accurate that an average minus to average condition adjustment.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that after making time and condition adjustments the subject property's real market value as of January 1, 2010, was $24,000. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account 800060 was $24,000. Now, therefore,

Dated this ____ day of April 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on April 2, 2012. The Court filed and entered this document on April 2, 2012.*